IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

---

MARY B. A.,

     Plaintiff,

v.           Civil Action No.
             3:19-CV-0607 (DEP)

COMMISSIONER OF SOCIAL SECURITY,

     Defendant.

---

APPEARANCES:        OF COUNSEL:

FOR PLAINTIFF

COUGHLIN, GERHART LAW FIRM  LARS P. MEAD, ESQ.
P.O. Box 2039
99 Corporate Drive
Binghamton, NY 13902-2039

FOR DEFENDANT

HON. GRANT C. JAQUITH     ANDREEA LECHLEITNER, ESQ.
United States Attorney for the   Special Assistant U.S. Attorney
Northern District of New York
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## ORDER

Currently pending before the court in this action, in which plaintiff

seeks judicial review of an adverse administrative determination by the Commissioner, pursuant to 42 U.S.C. § 405(g), are cross-motions for judgment on the pleadings.[1] Oral argument was conducted in connection with those motions on June 17, 2020, during a telephone conference held on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination did not result from the application of proper legal principles and is not supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, a transcript of which is attached and incorporated herein by reference, it is hereby

ORDERED, as follows:

1)   Plaintiff's motion for judgment on the pleadings is GRANTED.

2)   The Commissioner's determination that plaintiff was not disabled at the relevant times, and thus is not entitled to benefits under the

---

[1]   This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order once issue has been joined, an action such as this is considered procedurally, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

2

Social Security Act, is VACATED.

3) The matter is hereby REMANDED to the Commissioner, without a directed finding of disability, for further proceedings consistent with this determination.

4) The clerk is respectfully directed to enter judgment, based upon this determination, remanding the matter to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) and closing this case.

_____
David E. Peebles
U.S. Magistrate Judge

Dated:   June 29, 2020
         Syracuse, NY

```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
MARY B. A.,

                          Plaintiff,

vs.                                              19-CV-607

Commissioner of Social Security,

                          Defendant.
------------------------------------------------------------x
```

*DECISION* - June 17, 2020

James Hanley Federal Building, Syracuse, New York

HONORABLE DAVID E. PEEBLES

United States Magistrate Judge, Presiding

<u>APPEARANCES</u>  (by telephone)

```
For Plaintiff:    COUGHLIN, GERHART LAW FIRM
                  Attorneys at Law
                  99 Corporate Drive
                  Binghamton, NY 13902
                    BY:  LARS P. MEAD, ESQ.

For Defendant:    SOCIAL SECURITY ADMINISTRATION
                  Office of Regional General Counsel
                  26 Federal Plaza
                  New York, New York 10278
                    BY:  ANDREEA L. LECHLEITNER, ESQ.
```

*Eileen McDonough, RPR, CRR*
*Official United States Court Reporter*
*P.O. Box 7367*
*Syracuse, New York 13261*
*(315)234-8546*

1       THE COURT:  Let me express the Court's thanks to
2  both of you for excellent presentations, both written and
3  orally.  I have enjoyed working with you on this case.
4       The plaintiff has commenced a proceeding pursuant
5  to 42, United States Code, Section 405(g) to challenge a
6  determination by the Commissioner of Social Security finding
7  that she was not disabled at the relevant times and,
8  therefore, ineligible for the disability insurance benefits
9  for which she applied.  The background is as follows.
10       Plaintiff was born in April 1958.  She is currently
11  62 years of age.  She was 53 years old at the time of the
12  alleged onset of her disability, whether you consider it to
13  be October 31, 2011 or December 31, 2011.  Plaintiff stands
14  5-foot, 1-inch in height and has weighed at various times
15  between 123 and 138 pounds.
16       Plaintiff is separated; she has been since 2014.
17  She has three children and resides in a condominium in
18  Apalachin, New York.  Plaintiff is a high school graduate and
19  has two years of college education postgraduation from high
20  school.  At the time plaintiff was in school, she attended
21  regular classes.  Plaintiff is right-handed and drives.
22       Plaintiff has worked at various positions, having
23  stopped work on October 1, 2012.  That's at page 305 of the
24  Administrative Transcript.  Plaintiff last worked as a
25  cashier in a produce industry between June and October of

2012.  She has also worked in two different locations between April 2008 and June 2010 as a restaurant server.  She has worked in her husband's car sales business from 2001 to 2003, and continuing thereafter past 2004, though without pay.  Plaintiff is a nail artist, is a licensed nail technician, and was self-employed in that capacity from 1997 to 2003.

Physically, plaintiff suffers from a right shoulder issue.  In May of 2010 she indicated that it has been a problem for her for ten years.  She suffered a Workers' Compensation injury to her shoulder in May of 2010.  In June of 2010 she underwent arthroscopic decompensation and rotator cuff repair surgery.  A second surgery was required of a similar nature in February of 2015 as to her right shoulder.  Plaintiff testified she has no issues with regard to her left shoulder.

Plaintiff has also had breast reduction surgery and implant surgery.  She in March of 2006 underwent a hysterectomy with mesh placement.  In July of 2006 she underwent surgery for repair of a rectal prolapse, laparoscopic colon resection with rectopexy, plus bilateral ureteral stents.  In February of 2008 she underwent an open right colectomy.  In April of 2009 she underwent surgery for excision of the vaginal mesh with reconstruction of her vaginal wall.  Those surgeries were done by Dr. Dhruv Agneshwar.

1          Plaintiff has seen Dr. Mark Wilson for her
2    orthopedic issues, and has seen that doctor since May of
3    2010.  She has treated with Dr. Michael Barrett for her colon
4    and rectal surgeries, and Dr. Keith Nichols since at least
5    January of 2006 as a family physician.  Plaintiff has
6    residual pain, incontinence, shoulder pain, numbness,
7    tingling.  She also suffers from GERD, anemia and potentially
8    fibromyositis.
9          Mentally, plaintiff has experienced anxiety,
10   depression, and potentially PTSD, but has not undergone any
11   specialized treatment for those conditions.
12         In terms of medications, plaintiff has taken
13   hydrocodone for her shoulder; Cymbalta for her depression;
14   Lorazepam for anxiety; Omeprazole for stomach issues; Ambien;
15   acetaminophen; Proventil inhaler; Adderall; Lyrica; and
16   Darvocet.
17         Plaintiff was a former smoker but apparently no
18   longer smokes.  Plaintiff has a fairly robust list of
19   activities of daily living.  She can clean, do laundry.  She
20   shops three times per week.  She showers and grooms herself,
21   dresses, makes her bed.  She can prepare simple meals.  She
22   goes to the pool, goes to church, goes to the beach five
23   times per week, walks, talks on the telephone.  She likes
24   sewing and reading.
25         Procedurally, plaintiff applied for Title II

1  disability insurance benefits on March 17, 2015, alleging an
2  onset date of July 18, 2006.  That was later amended at the
3  hearing to December 31, 2011, although the Administrative Law
4  Judge in her decision mistakenly suggests that the amendment
5  was to October 31, 2011.
6       In making that application, plaintiff claimed the
7  inability to work based upon a right shoulder issue,
8  irritable bowel syndrome and other bowel issues, vaginal mesh
9  insert issues, depression, anxiety, anemia, GERD, back issue
10 and knee issues.  A hearing was conducted by Administrative
11 Law Judge Elizabeth Koennecke on December 12, 2017 to address
12 plaintiff's application for benefits.  On May 22, 2018 a
13 supplemental hearing with a vocational expert was conducted
14 by the Administrative Law Judge.
15      On May 31, 2018 ALJ Elizabeth Koennecke issued an
16 unfavorable decision, which is the subject of this challenge.
17 That became a final determination of the Agency on March 29,
18 2019, when the Social Security Administration Appeals Council
19 denied plaintiff's application for review of that decision.
20 This action was commenced on May 22, 2019; and is, therefore,
21 timely.
22      In her decision, Administrative Law Judge Koennecke
23 applied the familiar five-step sequential test for
24 determining disability.  She noted at the outset that
25 plaintiff was last insured on December 31, 2011.  She then

1  determined that plaintiff had not engaged in substantial
2  gainful activity between October 31, 2011, the date on which
3  ALJ Koennecke believed was the amended onset date, to the
4  date of last insured, or December 31, 2011.
5           At step two, ALJ Koennecke concluded that plaintiff
6  suffers from severe impairments imposing more than minimal
7  limitations on her ability to perform basic work functions,
8  including a right shoulder impairment and
9  gastrointestinal/gynecological impairment.
10          At step three, Administrative Law Judge Koennecke
11 concluded that plaintiff's conditions do not meet or
12 medically equal any of the listed presumptively disabling
13 conditions set forth in the Commissioner's regulations;
14 specifically, considering listing 1.02.
15          Plaintiff's medical history and records were
16 thereafter surveyed, and based on the Administrative Law
17 Judge Koennecke's review of the records, she determined that
18 the plaintiff is capable of performing at a residual
19 functional capacity, or RFC, light work as defined in the
20 regulations, except she is unable to carry greater than
21 10 pounds above shoulder level.  Applying that RFC,
22 Administrative Law Judge Koennecke concluded plaintiff is
23 unable to perform her past relevant work at substantial
24 gainful activity levels.
25          She concluded at step five, however, based on the

1   testimony of a vocational expert, that plaintiff is capable
2   of performing available work in the national economy as a
3   sales attendant, a photocopy machine operator, and a
4   manicurist.  She noted in her analysis that if plaintiff were
5   capable of performing a full range of light work, the
6   determination of not disabled would be directed by the
7   Medical-Vocational Guidelines, and specifically Grid Rule
8   202.20.
9            As you know, my task is limited.  The Court's
10  review is extremely deferential.  The Court must determine
11  whether correct legal principles were applied and whether the
12  determination that resulted is supported by substantial
13  evidence.  Substantial evidence is defined as such relevant
14  evidence as a reasonable mind might accept as adequate to
15  support a conclusion.  As the Second Circuit noted in *Brault*
16  *versus Social Security Administration*, 683 F.3d 443 (Second
17  Circuit 2012), this is an exacting standard, it is a far more
18  demanding standard than even the clearly erroneous standard
19  of review.
20           In this case we're dealing with a closed period,
21  whether it is measured from October 31, 2011, as the
22  Administrative Law Judge thought, or whether we're looking at
23  whether plaintiff was disabled on December 31, 2011.
24           Plaintiff in support of her challenge to the
25  determination raises several contentions.  First, she notes

several errors apparent in Administrative Law Judge Koennecke's decision, and misstatements, including regarding the amended onset date, the finding of plaintiff being a younger individual, and the finding of no mental impairment.

Next, she challenges the evaluation of plaintiff's medical evidence, and specifically contends that the Treating Source Rule was not honored, particularly with regard to Dr. Nichols and Dr. Barrett, and particularly in connection with Dr. Nichols' mental health medical source statement. She then argues that the resulting determination is not supported by substantial evidence.

In terms of the Treating Source Rule, ordinarily the opinion of the treating physician regarding the nature and severity of an impairment is entitled to considerable deference, provided that it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence. Treating source opinions are not controlling, however, if they are contrary to other substantial evidence in the record, including opinions of other medical experts.

If an Administrative Law Judge does not give controlling weight to a treating source's opinion, she must apply several factors to determine what degree of weight should be assigned to the opinion, including the length of the treatment relationship and the frequency of examination;

1   the nature and extent of the treatment relationship; the
2   degree to which the medical source has supported his or her
3   opinion; the degree of consistency between the opinion and
4   the record as a whole; whether the opinion is given by a
5   specialist; and other evidence which may be brought to the
6   attention of the ALJ.
7           In this case, in this circuit the Treating Source
8   Rule requires consideration of those factors that are
9   typically referred to as the *Burgess* factors.  In my
10  experience, it is rare to find an Administrative Law Judge
11  rotely going through those factors, and in such a case the
12  Court must review the record and be convinced based on a
13  searching review of the record that the Treating Source Rule
14  was not violated.  *Estrella versus Berryhill*, 925 F.3d 90
15  (Second Circuit 2019).
16          In this case I'll note a couple things of interest.
17  First, the two doctors at issue, Dr. Nichols and Dr. Barrett,
18  both treated the plaintiff over a significant period of time.
19  Secondly, with regard at least to the physical aspects of the
20  RFC, there is no countering medical opinion.  The
21  Administrative Law Judge has essentially formulated the RFC,
22  the physical aspects of the RFC, from her own review of the
23  medical evidence and notes and other evidence.  And although
24  that is certainly permitted in the case where common sense
25  can dictate the results, certainly this is not a case where

1   there is an opposing opinion either from an examining source
2   or a non-examining source when it comes to the physical
3   aspect.
4            In this case Dr. Michael Barrett issued a medical
5   source statement on December 20, 2016, and specifically at
6   the header indicated, "This assessment is valid for the
7   period from at least September 30, 2007 to date."  Noted that
8   he first treated the plaintiff in July of 2006.  In his
9   medical source statement he indicated that plaintiff could be
10  expected to be off task between 30 percent and 50 percent of
11  the time.  Obviously, something that is inconsistent with
12  gainful employment.  And also indicated that plaintiff would
13  be absent more than three times per month.  The statement is
14  at 697 -- I'm sorry, it comes in two parts; page 1 at 697,
15  pages 2 and 3 appear to be at 627 and 628.  I know it's kind
16  of difficult to piece them together.
17           Administrative Law Judge Koennecke at pages 20 and
18  21 found that Dr. Barrett's report was entitled to no weight
19  because it was rendered years after the relevant period.  But
20  as I indicated, it states at the outset that it is valid from
21  September 30, 2007 forward.  She cites inconsistency of the
22  record based on exercise and a return to part-time work.  The
23  *Burgess* factors clearly were not addressed specifically.  It
24  overlooks the fact that plaintiff underwent shoulder surgery
25  in 2010 and had continued shoulder, vaginal and

1  gastrointestinal issues.
2          Dr. Nichols rendered two reports, one on
3  December 20, 2016, again stating at the outset, "This
4  assessment is valid for the period from at least
5  September 30, 2007 to date."  Noted that he first treated the
6  plaintiff in July of 2006.  I take that back; I'm looking at
7  the wrong one.  The first was -- both were issued on
8  November 28, 2017.  The first, again, indicates, "This
9  assessment is valid for the period from at least
10 September 30, 2007 to date."  It appears in the record at 952
11 through 954 of the Administrative Transcript.  It identifies
12 symptoms including pain, altered range of motion, weakness,
13 anxiety, depression, impaired concentration and focus.  It
14 indicates that plaintiff would be expected to be off task
15 between 30 percent and 50 percent of the time, and absent
16 more than three times per month.  It also limits plaintiff to
17 walking two hours in an eight-hour day, standing one hour in
18 an eight-hour day, and sitting four hours in an eight-hour
19 day, and indicating that plaintiff cannot lift anything even
20 up to 10 pounds in a competitive work situation.
21         The second opinion from Dr. Nichols appears at 949
22 to 951 of the Administrative Transcript.  It indicates again,
23 "This assessment is valid for the period from at least
24 September 30, 2007 to date."  It indicates that plaintiff
25 would be off task more than 50 percent of the time.  It

1    indicates that plaintiff's ability to deal with stress is
2    poor and plaintiff's demonstrated reliability is also
3    assessed as poor.
4            The doctor also indicated on page 951, "I have
5    known the plaintiff since we were both children.  I am
6    intimately familiar with her personal and medical history.  I
7    have served as her physician for many years.  I have a high
8    degree of confidence in my analysis of her abilities and
9    capacities."
10           Again at page 21 Administrative Law Judge Koennecke
11   in a paragraph finds the opinion of Dr. Nichols entitled to
12   no weight.  There is no specific mention of the mental health
13   medical source statement.  It is referenced; Exhibit 31F and
14   19F are both referenced.  Administrative Law Judge Koennecke
15   does reference the opinions of Dr. Nichols suggesting that it
16   might be two separate documents; however, she also uses the
17   plural when referring to the single medical source statement
18   of Dr. Barrett.  At page 21 she references the opinions of
19   Michael Barrett.
20           The opinion clearly was rendered in 2017, which the
21   Administrative Law Judge indicates, but Administrative Law
22   Judge Koennecke does not specifically reference the *Burgess*
23   factors.  It's unclear to the Court whether the mental health
24   medical source statement was considered and why it was
25   rejected.  I note that ALJ Koennecke concluded at page 18,

1  "With regard to mental health issues, there is no evidence
2  during the period in question."  There is evidence in the
3  record of mental health issues.  Plaintiff has been
4  prescribed Lorazepam for anxiety and Cymbalta for depression.
5  She indicated anxiety August 5, 2009, at page 814, and stress
6  at 815.  Frequent crying is referenced on October 30, 2009.
7  That's at page 817.  Anxiety again referenced at page 821 to
8  822.  Depression on October 5, 2010, that's at 824.
9        About the time that we're talking about, the
10 relevant period, on August 31, 2011, there is reference to
11 anxiety and depression and plaintiff being on Cymbalta.
12 That's at page 830 of the Administrative Transcript.  On
13 December 12, 2011 plaintiff reports alcoholism, anxiety,
14 frequent crying, depression, and stress, at page 832, and is
15 diagnosed as suffering from anxiety, 833.
16        So, I am not confident, as *Estrella* requires, that
17 the Treating Source Rule was not violated to the
18 consideration of the opinions of Dr. Barrett and Dr. Nichols,
19 and particularly the mental health issue addressed by
20 Dr. Nichols.  I know that Dr. Kamin at page 67 stated that,
21 "Insufficient evidence to establish a medically determinable
22 impairment during the adjudicative period."  But the courts
23 have cautioned on rejecting medical source opinions from
24 treating sources by reliance on a particularly vague
25 statement by a non-examining source.

1          The other issue I have, and I hold ALJ Koennecke in
2   regard, but I know that there is a significant volume that
3   some of these decisions are written by decision writers, but
4   I am concerned about the errors that appear in her decision.
5   I agree that the error concerning plaintiff's age probably
6   would not have changed the outcome; it would have applied
7   Rule 202.13 as opposed to 202.20.  And, in any event, the
8   vocational expert had the correct age information when
9   rendering opinions concerning available work.
10          A little more concerning is the statement about
11  returning to work as a waitress in 2011, at the critical time
12  period, it comes after the shoulder surgery, it's a relevant
13  time period, and the earnings aren't reflected and her
14  testimony is not to the effect that she returned to work as a
15  waitress in 2011.  And the fact that she had a second surgery
16  on her shoulder in 2015 reveals that there have been residual
17  issues with regard to her shoulder.
18          In my view this is a case that needs a fresh look.
19  I don't find any persuasive proof of disability.  It really
20  needs a fresh look at the entire record and, in particular,
21  the medical source statement of Dr. Barrett and the two
22  medical source statements of Dr. Nichols.
23          So, I will grant judgment on the pleadings to the
24  plaintiff, vacating the determination of the Commissioner and
25  remanding the matter without a directed finding of

1  disability.
2         Thank you both for excellent presentations and I
3  hope you stay safe in these interesting times.
4                  *              *              *
5
6                      C E R T I F I C A T I O N
7
8         I, EILEEN MCDONOUGH, RPR, CRR, Federal Official
9  Realtime Court Reporter, in and for the United States
10 District Court for the Northern District of New York,
11 do hereby certify that pursuant to Section 753, Title 28,
12 United States Code, that the foregoing is a true and correct
13 transcript of the stenographically reported proceedings held
14 in the above-entitled matter and that the transcript page
15 format is in conformance with the regulations of the
16 Judicial Conference of the United States.
17
18
19
20     _____
21         EILEEN MCDONOUGH, RPR, CRR
           Federal Official Court Reporter
22
23
24
25